Approved: _Daniel Nessim_
DANIEL G. NESSIM
Assistant United States Attorney

20 MAG 278

Before:   THE HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

------------------------------------X
                                     :    **SEALED COMPLAINT**
UNITED STATES OF AMERICA             :
                                     :
          -v.-                       :    Violations of
                                     :    18 U.S.C. §§ 2251,
GRIFFIN KAPELUS,                     :    2252A, 875, and 2
                                     :
                                     :
                                     :    COUNTY OF OFFENSE:
          Defendant.                 :    NEW YORK
                                     :
------------------------------------X

SOUTHERN DISTRICT OF NEW YORK, ss.:

          MICHAEL G. BUSCEMI, being duly sworn, deposes and says
that he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

## COUNT ONE
(Production of Child Pornography)

          1.   In or about July 2018, in the Southern District of New
York and elsewhere, GRIFFIN KAPELUS,   the defendant, knowingly
attempted to and did employ, use persuade, induce, entice, and
coerce a minor to engage in sexually explicit conduct for the
purpose of producing a visual depiction of such conduct and for
the purpose of transmitting a live visual depiction of such
conduct, knowing and having reason to know that such visual
depiction would be transported and transmitted using a means and
facility of interstate and foreign commerce, and in and affecting
interstate and foreign commerce, which visual depiction was
produced and transmitted using materials that had been mailed,
shipped, and transported in and affecting interstate and foreign
commerce by any means, including by computer, and was actually
transported and transmitted using a means and facility of
interstate and foreign commerce and in and affecting interstate
and foreign commerce, to wit, KAPELUS recorded a video of a minor

victim ("Victim-1"), without that person's consent, depicting Victim-1 exposing her breasts, vagina, and masturbating.

(Title 18, United States Code, Sections 2251(a), (e), and 2.)

## COUNT TWO
(Possession of Child Pornography)

2.    From at least in or about 2013 up to and including the present, in the Southern District of New York and elsewhere, GRIFFIN KAPELUS, the defendant, knowingly did possess and access with intent to view, and attempt to possess and access with intent to view a book, magazine, periodical, film videotape, computer disk, and other material that contained an image of child pornography that had been mailed, and shipped and transported using a means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce by any means, including by computer, and that was produced using materials that had been mailed, shipped, and transported in and affecting interstate and foreign commerce by any means, including by computer, to wit KAPELUS compiled and accessed digital photographs and videos depicting, among other things, the genitals of and masturbation by individuals under the age of eighteen years' old.

(Title 18, United States Code,
Sections 2252A(a)(5)(B), (b)(2).)

## COUNT THREE
(Extortion)

3.    From at least in or about 2013 up to and including the present, in the Southern District of New York and elsewhere, GRIFFIN KAPELUS, the defendant, with intent to extort from any person, firm, association, or corporation, money and things of value, transmitted in interstate and foreign commerce any communication containing threats to injure the property and reputation of the addressee and of another and the reputation of a deceased person and threats to accuse the addressee and any other person of a crime, to wit KAPELUS, using the internet and phone-based internet applications, threatened that he would damage the reputation of his victims by disseminating nude photographs and videos of those victims unless his victims agreed to send KAPELUS additional nude and sexual photographs and videos.

(Title 18, United States Code, Sections 875(d), 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

4.    I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter.    This affidavit is based upon my personal participation in the investigation, my examination of reports, records, seized evidence, and photographs, and my conversations with other law enforcement officers and other individuals.    Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.    Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated.

### Overview of the Sextortion Scheme

5.    Based on my involvement in this investigation, my review of records and documents, my conversations with witnesses and victims, and, as described in greater detail herein, I have learned about a sextortion scheme perpetrated by GRIFFIN KAPELUS, the defendant, consisting of the following features, among others:

a.    Since at least in or about 2013, KAPELUS has surreptitiously obtained, created, demanded the creation of, received, possessed, and accessed pornographic photographs and videos of numerous victims under the age of eighteen.

b.    In the course of this scheme, KAPELUS utilized several social media and email accounts in order to impersonate young-adult females in order to induce victims to share pornographic photographs and videos of themselves.

c.    KAPELUS would provide specific directions to his victims regarding the types of photographs and videos he wished to receive.

d.    In order to obtain additional pornographic photographs and videos from his victims, KAPELUS threatened that if his victims did not create and transmit the images and videos he demanded, he would publicize among a victim's family and friends the photographs and videos of the given victim that were already in KAPELUS's possession.

e.    KAPELUS stored the pornographic photographs and videos he received in social media accounts and digital storage

accounts, accessing those photographs and videos as recently as July 2019.

## Information Provided by Victim-2

6.    From my participation in this investigation, my conversations with an individual ("Victim-2"), and review of documents, I have learned, in substance and in part, the following:

a.    In or around fall 2013, Victim-2 lived in New York, New York, was approximately fifteen years' old, and was a freshman in high school.   Victim-2 was approached by a soccer teammate ("Individual-1"), who told Victim-2 that one of Individual-1's family friends living outside of New York State wished to exchange nude photographs with Victim-2.   Victim-2 agreed, and Individual-1 introduced Victim-2 to the supposed California woman, who went by the name "Sarah Taylor."

b.    Over the next several weeks, Victim-2 exchanged nude photographs with "Sarah Taylor" over social-media applications.    After an exchange of approximately five photographs, Victim-2 began to suspect that "Sarah Taylor" was not who she claimed to be because "Sarah Taylor" was sending what appeared to be professional photographs and the photographs did not all seem to belong to the same woman.   As a result of his suspicions, Victim-2 stopped responding to messages from "Sarah Taylor."

c.    Approximately one year later, Victim-2 was contacted by an account that purported to be "Sarah Taylor." "Sarah Taylor" threatened to release Victim-2's previously sent nude photographs unless Victim-2 produced and sent an additional ten nude photographs within five minutes.   Victim-2 complied with this demand, producing and sending the nude photographs.

d.    Over the next approximately two years, Victim-2 received numerous periodic demands from an individual claiming to be "Sarah Taylor."[1]   In these demands, Sarah Taylor requested the production and transmission of nude photographs and videos. Sometimes these demands included specific and detailed directions

---

[1] Victim-2 was contacted by "Sarah Taylor" on numerous accounts on various social-media platforms over the time period referenced herein.    Most, if not all, of these accounts were styled as "SarahTaylor" and then a series of numbers.  Occasionally, Victim-1 would receive messages from "Sarah Taylor" from accounts utilizing the name "Jamie Dunne."

4

regarding the poses Victim-2 should strike in the photographs and videos. Occasionally, "Sarah Taylor" demanded reshoots of photographs that were unsatisfactory. In the course of making these demands, "Sarah Taylor" threatened that, if Victim-2, did not comply, "Sarah Taylor" would release nude photographs and videos of Victim-2 to Victim-2's friends and family. Among the accounts "Sarah Taylor" used to contact Victim-2 was a social media account in the name of "Sarah Taylor" (the "Sarah Taylor Social Media Account").

        e.    In or about Victim-2's sophomore year in high school, in or about 2014 or 2015, "Sarah Taylor" requested that Victim-2 connect "Sarah Taylor" with friends of Victim-2. Victim-2 was instructed to identify "Sarah Taylor" as a family friend of Victim-2's. Victim-2, presuming that "Sarah Taylor" intended to recruit additional victims, declined to do so.

        f.    As is discussed in greater detail below, Victim-2 sent "Sarah Taylor" nude photographs and videos of Victim-2, many of which were produced and sent when Victim-2 was under the age of eighteen. These materials included videos of Victim-2 masturbating.

        g.    In total, Victim-2 estimates that Victim-2 sent approximately one hundred nude photographs and videos of Victim-2 to "Sarah Taylor."

        h.    On or about June 14, 2018, Victim-2 received an email from an account that included "SarahTaylor" in its account name (the "Sarah Taylor Email Account" and the "June 14 Email"). The subject line of the June 14 Email read "Respond or u no what happens." Victim-2 ignored this email.

        i.    Shortly after the June 14 Email was transmitted, a social-media account including "JamieDunne" in its account name contacted one of Victim-2's friends. The user of this account wrote "Tell your friend [Victim-2] to dm me or his nudes go out to all his followers," "If I don't get something from him in the next 10 minutes I start sending them out," and "Oh yeah and the videos of him masturbating." The user of this account also sent a naked photograph of Victim-2 and wrote "Here in case u don't believe me."

### Search of Social Media Accounts

    7.    Based on my involvement in this investigation, I have conducted a review of several social media accounts, hosted on numerous social media platforms, in the name of "Sarah Taylor" and

"Jamie Dunne." One of these accounts is the Sarah Taylor Social Media Account, identified above.

8. Based on my review of the Sarah Taylor Social Media Account, I have learned, among other things, the following:

a. On or about May 20, 2015, the user of the Sarah Taylor Social Media Account sent a message to an individual ("Victim-3") reading "if i dont get a bunch of pics in 5 minutes im sending them out talk to u in 5 minutes." Victim-3 responded "ur gonna send out pics of my abs" and then "so your blackmailing me." The user of the Sarah Taylor Social Media Account then responded "unless I get a ton of pics tonight, im sending out ur pics." As is discussed in greater detail below, Victim-3 sent two emails containing three videos to the Sarah Taylor Email Account at approximately 1:30 a.m. on or about May 21, 2015.

b. On or about January 4, 2017, the user of the Sarah Taylor Social Media Account contacted an individual ("Victim-4") and requested, in substance and in part, that Victim-4 send shirtless photographs. First, the user of the Sarah Taylor Social Media Account, threatened, in substance and in part, that if Victim-4 did not comply, the user of the Sarah Taylor Social Media Account would send photographs of Victim-4 in "her" possession to Victim-4's friends. Victim-4 responded to this threat by stating that "except that you black mailed me to show my girlfriend." Second, the user of the Sarah Taylor Social Media Account threatened, in substance and in part, that he/she would kill himself/herself if Victim-4 did not comply.

## Search of Email Accounts

9. Based on my involvement in this investigation, I have conducted a review of the Sarah Taylor Email Account pursuant to a judicially authorized search warrant. A search of the Sarah Taylor Email Account revealed, among other things, the following:

a. At approximately 1:30 a.m. on or about May 21, 2015 Victim-3 sent two emails to the Sarah Taylor Email Account. These emails contained three videos. Based on my understanding of Victim-3's date of birth, Victim-3 sent these emails when he was approximately seventeen years' old.

b. On or about September 19, 2015 and again on or about September 27, 2015, an individual ("Victim-5") sent the Sarah Taylor Email Account videos of Victim-5 exposing his penis and masturbating. Based on my understanding of Victim-5's date of

6

birth, these videos were distributed when Victim-5 was approximately fifteen years' old.

c.    On or about October 6, 2015, the Sarah Taylor Email Account emailed Victim-5, writing "Babe lets trade pics now" and then "and if u don't respond to me I can just s[en]d ur nudes I guess."

d.    On or about October 6, 2015, at approximately 12:58 a.m., the Sarah Taylor Email Account emailed Victim-6, writing "what is taking so long." At approximately 1:30 a.m., Victim-6 sent the Sarah Taylor Email Account three videos. Based on my understanding of Victim-6's date of birth, Victim-6 sent these emails when he was approximately sixteen years' old.

e.    On or about July 3, 2016, Victim-2 sent the Sarah Taylor Email Account a video, created on or about July 3, 2016, depicting Victim-2 masturbating. Based on my understanding of Victim-2's date of birth, this video was taken when Victim-2 was approximately seventeen years' old.

10.   Based on my involvement in this investigation, I have conducted a review, pursuant to a judicially authorized search warrant, of an email account in the name of Jamie Dunne that was used to contact Victim-2 and others (the "Jamie Dunne Email Account"). A search of the Jamie Dunne Email Account revealed, among other things, the following:

a.    On or about June 19, 2018, the user of the Jamie Dunne Email Account emailed Victim-4 a message reading "send your nudes or else."

## Search of Digital Storage Account

11.   Based on my involvement in this investigation, I have conducted a review, pursuant to a judicially authorized search warrant, of a digital storage account associated with the Sarah Taylor Email Account (the "Sarah Taylor Storage Account"). A search of the Sarah Taylor Storage Account revealed, among other things, the following:

a.    An organized filing system of folders bearing the names of approximately thirty-five individuals. Within each folder is a collection of photographs and videos of the individuals identified by the folder name in various states of undress and/or engaged in sexual activity or poses.

7

b.    One such folder is entitled in the name of an individual ("Victim-1") and includes two videos of Victim-1 masturbating.  One video was created in or about June 2018 and the other was created in or about July 2018.  Based on my conversations with Victim-1, I have learned that Victim-1 participated in video chats with a person she knew to be GRIFFIN KAPELUS, the defendant, that these videos were taken in the course of these video chats, and that Victim-1 specifically instructed KAPELUS not to record the videos.  Based on my understanding of Victim-1's date of birth, these videos were created when Victim-1 was approximately seventeen years' old.

c.    One such folder is entitled in the name of Victim-2 and includes the following materials, among others:

i.    A photograph, created on or about May 25, 2015, of Victim-2 exposing his penis.  Based on my understanding of Victim-2's date of birth, on the date these photographs appear to have been created, Victim-2 was approximately sixteen years' old.

ii.    Several photographs, created on or about July 3, 2016, of Victim-2 exposing his penis.  Based on my understanding of Victim-2's date of birth, on the date these photographs appear to have been created, Victim-2 was approximately seventeen years' old.

d.    One such folder is entitled in the name of Victim-5 and includes a photograph of an erect penis.  The file name of this photograph indicates the photograph was taken on April 5, 2016.  Based on my understanding of Victim-5's date of birth, on the date this photograph appears to have been created, Victim-2 was approximately seventeen years' old.

e.    Deleted files in the Sarah Taylor Storage Account reveal two additional videos of Victim-6.  These videos were modified in or about October 2015 and depict Victim-6 masturbating.  Based on my understanding of Vicitm-6's date of birth, these videos appear to have been modified when Victim-6 was approximately sixteen years' old.

f.    One such folder is entitled in the name of an individual ("Victim-7") and includes several photographs created on or about May 25, 2015 that are screenshots taken of photographs, shared over a social media platform, of a teenage male exposing his erect penis.  Based on my understanding of Victim-7's date of birth, on the date these photographs appear to have been created, Victim-7 was approximately seventeen years' old.

g.   One such folder is entitled in the name of an individual ("Victim-8") and includes photographs created on or about May 25, 2015 that are screenshots taken of photographs, shared over a social media platform, of a teenage male exposing his erect penis.   Based on my understanding of Victim-8's date of birth, on the date these photographs appear to have been created, Victim-8 was approximately seventeen years' old.

h.   The Sarah Taylor Storage Account has been accessed as recently as July 2019.

### Identification of the Defendant

12.   Based on my review of information related to the Sarah Taylor Social Media Account, I have learned that on or about January 20, 2018, an individual logged into the Sarah Taylor Social Media Account from an a particular IP Address[2] ("IP Address-1").

13.   Based on my review of documents produced by an internet service provider ("Provider-1") and information maintained on databases that compiles publicly available address and identifying information associated with individuals, I have learned that from in or about September 2017 through in or about February 2018, IP Address-1 was assigned to a residential account of the Manhattan address that is the family home of GRIFFIN KAPELUS, the defendant.

14.   Based on my review of the Sarah Taylor Storage Account, I have learned that the metadata for a particular image shows that it was created by an individual using an email account in the name of GRIFFIN KAPELUS, the defendant (the "Kapelus Email").[3]   Based on my training and experience, I understand that this indicates that the image in question was downloaded and/or saved by KAPELUS or an individual using the Kapelus Email.

15.   Based on a comparison of IP Addresses used to access the Sarah Taylor Social Media Account and the Kapelus Email, I have learned that both accounts have been accessed  by the same eight identical IP Addresses, which, based on my training and experience

---

[2] An IP Address, or Internet Protocol Address is a numerical label assigned to an address that is connected to the internet.   An IP Address can identify the specific device or internet router that uses the internet to connect to a particular website or account.

[3] In the digital context, metadata provides detailed information about a piece of digital content.   For example, metadata may contain information about a digital object's size, format, creation, modification, transmission, and more.

indicates that both accounts have been accessed from the same locations.

16. Based on my conversations with Victim-1, I have learned that the videos of Victim-1 stored in the Sarah Taylor Storage Account were taken by GRIFFIN KAPELUS, the defendant, in the course of video chats that Victim-1 had with the person Victim-1 knew to be KAPELUS.

WHEREFORE, the deponent respectfully requests that a warrant be issued for the arrest of GRIFFIN KAPELUS, the defendant, and that he be arrested and imprisoned, or bailed, as the case may be.

MICHAEL BUSCEMI
Special Agent
Federal Bureau of Investigation

Sworn to before me this
9th day of January, 2020

THE HONORABLE DEBRA FREEMAN
United States Magistrate Judge
Southern District of New York

10